UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CANDACE MULLINS, natural mother and surviving next friend of Carlyle Mullins, a deceased minor child, <br><br> Plaintiff, <br><br> v. <br><br> STEPHANIE HALL, individually, and MANDY LEWIS, individually, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 10-0966
Judge Sharp

**MEMORANDUM**

This is a sad and tragic case brought by Plaintiff, Candace Mullins, as the mother and surviving next friend of her son, Carlyle Mullins ("Carlyle"), who died after he was removed from Plaintiff's care and placed in the custody of Plaintiff's aunt on the recommendation of the Tennessee Department of Children Services ("DCS"). Defendant Stephanie Hall ("Ms. Hall"), a DCS Case Manager, and Defendant Mandy Lewis ("Ms. Lewis"), a DCS Team Leader, have filed Motions to Dismiss (Docket Nos. 11 & 21), to which Plaintiff has responded in opposition. (Docket Nos. 16 & 23). For the following reasons, the Motions to Dismiss will be granted.

**I. FACTUAL BACKGROUND**[1]

On April 18, 2005, DCS received a referral regarding Plaintiff's three sons. The following day, a meeting was held between DCS representatives (including Ms. Hall and Ms. Lewis), Plaintiff's family, and Lolitha Crook ("Ms.Crook"), Plaintiff's aunt. After the meeting, DCS recommended

---

[1] The factual allegations are drawn from Plaintiff's Amended Complaint (Docket No. 3) and are accepted as true for present purposes.

1

to the court that Plaintiff's children temporarily be placed in the custody of Ms. Crook, and live in Ms. Crook's residence where Ms. Crook's 19 year old daughter, Latara Williams ("Ms. Williams"), also resided. The placement was approved by the Davidson County Juvenile Court and the case was closed by DCS on May 9, 2005.

On May 17, 2005, Plaintiff called Ms. Hall and voiced concerns about the welfare of the children because Ms. Crook was away from the home for approximately twelve hours a day, during which time the children were cared for by Ms. Williams. According to Plaintiff, Ms. Williams was mentally challenged, had the maturity level of a 13 year old, was incapable of caring for the children, and had started a fire that burned Carlyle's arm.

That same day, Ms. Hall went to the Ms. Crook residence and observed a burn, as well as bruises, scars, and what looked like a bite mark on Carlyle's body. Ms. Hall accepted Carlyle's and Ms. Crook's explanation of how Carlyle came to be burned, even though Plaintiff had informed Ms. Hall during their telephone discussion that Ms. Williams had told Carlyle not to tell anyone how the burn occurred. No inquiry was made as to how Carlyle received the bruises and what appeared to be a bite mark, nor did Ms. Hall interview, or look at, Carlyle's brothers to determine if they, too, had been physically abused. Nine days later, Carlyle was dead, allegedly murdered at the hands of Ms. Williams.

Plaintiff claims that Ms. Hall's and Ms. Lewis's actions or inactions violated a litany of DCS regulations. In fact, investigators later concluded Ms. Hall was negligent and had demonstrated incompetence in not conducting a proper investigation, and Ms. Lewis did not properly supervise Ms. Hall.

As a result of the foregoing, Plaintiff filed a claim with the Tennessee Claims Commission ("Claims Commission" or "Commission") on November 5, 2005, seeking redress for Carlyle's death.

On July 17, 2008, after a plenary trial, the Claims Commission dismissed Plaintiff's claims, finding that (1) Plaintiff failed to prove DCS was negligent in recommending to the juvenile court that temporary custody be awarded to Ms. Crook; (2) the Commission lacked jurisdiction over the claim because Carlyle was not in the care, custody, and control of DCS during the investigation following Plaintiff's call to Ms. Lewis; and (3) even if the Commission had subject matter jurisdiction, Plaintiff failed to prove DCS's negligence caused Carlyle's death. On September 17, 2010, the Tennessee Supreme Court affirmed the dismissal on subject matter grounds, holding that "the Tennessee Claims Commission was without jurisdiction to hear this claim against the State because it did not arise out of the negligent care, custody, and control of a person by a state employee." Mullins v. State, 320 S.W.3d 273, 283 (Tenn. 2010).

The present action was filed on October 14, 2010. Plaintiff claims the wrongful acts and omissions of Defendants violated Carlyle's Fourteenth Amendment rights to substantive and procedural due process in violation of 42 U.S.C. § 1983.

## II. DISCUSSION

Defendants raise four grounds for dismissal: (1) by bringing a claim in the Claims Commission against the State of Tennessee under Tenn. Code Ann. § 9-8-307(a), Plaintiff waived any claim for relief based upon the same acts or omissions; (2) the Complaint was filed outside the one year statute of limitations applicable to Section 1983 actions; (3) the Complaint sounds in negligence, and, therefore, fails to state a claim under Section 1983; and (4) Defendants are entitled to qualified immunity. Because the Court finds Plaintiff's present suit is barred as a result of her having filed a claim with the Commission, the Court does not reach the last three arguments raised by Defendants.

In 1984, the Claims Commission was established to create a forum for individuals to bring

3

claims against the State, notwithstanding the State's sovereign immunity. Shell v. State, 893 S.W.2d 416, 418 (1995). Under subsection (a) of Tenn. Code Ann. § 9-8-307, the Claims Commission "has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of 'state employees'" which fall within certain specific categories, including the "negligent care, custody and control of person[s]." Id. §(a)(1)(e). Subsection (b), in turn, provides:

> (b) Claims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee. The waiver is void if the commission determines the act or omission was not within the scope of the officer's or employee's office or employment.

Id. § (b). The interplay of these two statutory subsections has been described as follows:

> The Tennessee Claims Commission Act, Tenn. Code Ann. § 9–8–301 et seq., waives the state's sovereign immunity and provides claimants with a cause of action—and a deep pocket—that they would not otherwise be able to pursue. In exchange for this waiver of immunity, the Claims Commission Act imposes a strict election of remedies requirement. The moment the plaintiff's claim is "filed" with the Claims Commission, the plaintiff has waived all other causes of action against any state officer or employee based on the same act or omission.

Haley v. Univ. of Tennessee-Knoxville, 188 S.W.3d 518, 524 (Tenn. 2006).

Here, Defendants argue that, in accordance with subsection (b) of the statute, Plaintiff has waived any claim under Section 1983 because she chose to file a claim with the Claims Commission, and the Commission did not determine that Defendants acted outside the scope of their employment. Plaintiff labels this argument "counterintuitive," and argues that the Tennessee Supreme Court's determination that the Commission was without subject matter jurisdiction is dispositive. (Docket No. 16 at 2). In this Court's opinion, the fact that the Tennessee Supreme Court ruled the Commission was without jurisdiction does not mean there was no waiver because that very same court has held the mere filing of the claim constitutes the waiver.

In Haley, the Tennessee Supreme Court was presented with the following certified question

4

from the United States District Court for the Eastern District of Tennessee:

> Does the withdrawal or voluntary non-suit of a claim filed with the Tennessee Claims Commission, done prior to any action being taken by the Claims Commission, still activate the waiver provision of Tennessee Code Annotated section 9–8–307(b) to require dismissal of a plaintiff's federal and/or state cause of action arising from the same act or omission as the claim before the Claims Commission?

Id. at 520. Noting that "[t]he words of the statute are plain," the court answered the question in the affirmative, writing that the "filing of the claim waives all other causes of action against any state officer or employee based on the same act or omission," and that there can be no "reversing the activation of the waiver," because "once the claim has been filed and the waiver has been activated, it cannot be 'undone.'" Id. at 524. This language is easily read to suggest that the mere filing of the claim is what activates the waiver, regardless of whether the claim should have been filed with the Commission in the first place.[2]

To be sure, the Tennessee Supreme Court's construction of the waiver provision in subsection (b) is not dispositive on the issue of whether a plaintiff who pursues a claim before the Commission can also pursue a claim in federal court under Section 1983. However, the Sixth Circuit has addressed the issue (albeit in the context of already filed Section 1983 actions) and, like the Tennessee Supreme Court, reads the waiver provision broadly.

In White v. Gerbitz, 860 F.2d 661, 664 (6th Cir. 1988), an arrestee brought an action in federal court under 42 U.S.C. § 1983, and subsequently filed a substantially similar claim with the Claims

---

[2] The Sixth Circuit has also held that "a claim is commenced at the time of the filing" and the waiver occurs at that point, otherwise the date for tolling statutes of limitations set forth later in the Act would make little sense. In re Drew v. Univ. of Tennessee Reg. Med. Ctr., 1997 WL 441752 at *4 (6th Cir. Aug. 5, 1997). In this regard, Tenn. Code Ann. § 9-8-402(b) provides that "[t]he filing of the notice by the claimant tolls all statute of limitations as to other persons potentially liable to the claimaint due to the occurrence from which the claim before the commission arises." As the Sixth Circuit in In re Drew pointed out, "[i]t is highly unlikely that the statute of limitations would be tolled but that, without any mention in the statute whatsoever, a different date for the effectiveness of the waiver would apply." Id. at *4.

5

Commission. On appeal, the Sixth Circuit held the district court erred in failing to dismiss the case without prejudice[3] because the Claims Commission "statute dictates that, where the plaintiff elects to sue the state before the Tennessee Claims Commission, he waives any cognate federal cause of action." Subsequently, in In re Drew, the Sixth Circuit confirmed that dismissal is appropriate when a claim is filed with the Claims Commission, and observed that the waiver provision found in the statute "do[es] not violate the individual rights guaranteed by the Constitution" because claimants have "'an option not otherwise available to them, and any claimant who does not like the statutory option is perfectly free to reject it and prosecute a § 1983 action against the state officials.'" In re Drew, 1997 WL 441752 at *3 (quoting, Leaman v. Ohio Dept. of Mental Retardation, 825 F.3d 946, 953 (6th Cir. 1987) (*en banc*)(interpreting "nearly identical" Ohio statute). In short, Tennessee " may legally require a plaintiff to choose between the administrative proceedings provided by the Claims Commission and a lawsuit filed in federal court." Id.

In this case, Plaintiff had choices. She could have filed with the Claims Commission or in federal court, or she could have filed in both, with her federal claims subject to dismissal unless the Claims Commission found that Defendants' actions were *ultra vires*. With choices come potential risks, risks which must be weighed against the possible benefits.

On the one hand, by filing with the Claims Commission, Plaintiff was able to sue the State for damages, something the Eleventh Amendment would have prohibited her from doing in federal court. See, Papasan v. Allain, 478 U.S. 265, 276 (1986) (Eleventh Amendment bars citizen's suit

---

[3] The reason that the case should have been dismissed without prejudice was to account for the possibility that the Claims Commission could determine the defendants acted outside the scope of their employment, thereby voiding the waiver under Tenn. Code Ann. § 9-8-307(b). Here there was no finding, let alone any suggestion, that Ms. Hall or Ms. Lewis acted outside the scope of their employment in relation to their dealings with Plaintiff and her son, Carlyle.

against state "whether the relief sought is legal or equitable"). The benefit of this, of course, is that the State is said to have "deep pockets," Haley, 188 S.W.3d 824, certainly pockets deeper than the individual defendants who can only be sued for damages in federal court in their personal capacity. See, Hafer v. Melo, 502 U.S. 21, 26 & 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of [Section 1983] because they assume the identity of the government that employs them," but "officers sued in their individual capacity come to court as individuals" and may be held personally liable for damages). Additionally, before the Commission, Plaintiff had the task of showing negligence, as opposed to proving the deprivation of a Constitutional right and overcoming qualified immunity. See, Rippy v. Hattaway, 270 F.3d 416, 419-20 (6th Cir. 2001) (citation omitted) ("When a defendant asserts qualified immunity in the face of a claim under § 1983, the plaintiff bears an additional burden of pleading facts that, if taken as true, establish 'not only the violation of his rights, but also that these rights were so clearly established when the acts were committed that any official in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from the conduct.'").

On the other hand, by proceeding exclusively against the State before the Claims Commission, Plaintiff ran the risk that the Claims Commission would dismiss her claim for any of a number of reasons, including because Carlyle was not within the care, custody, and control of a state employee. There was more than a remote possibility Plaintiff's claim would be dismissed and it was something which needed to be weighed because the Tennessee appellate courts on many occasions have addressed the subject matter jurisdiction of the Claims Commission, see, In re Demitrus M.T., 2011 WL 863288 at *14 (Tenn. Ct. App. Mar. 14, 2011) ("[t]here is a multitude of cases explaining the relationship between sovereign immunity and the subject matter jurisdiction of the Commission"), and, "[u]nder both Tennessee and federal law, parties bringing claims against the

state are 'presumed to know the law and the rules of the commission.'" In re Drew, 1997 WL 441752 at *4 (quoting, Tuck v. States, 1996 WL 310012 at *3 (Tenn. Ct. App., June 11, 1996). In short,

> The plaintiff[] in this action [wa]s not required to file with the Division of Claims Administration at all, and could have chosen instead to pursue [her] claims under § 1983. Because [she] did file against the state itself, [she has] made [her] choice and [is] precluded from continuing [her] federal cause of action.

Id. at *5.

"When the state trades in its immunity, it gives the plaintiff only one bite at the apple where the plaintiff would otherwise have no ability to proceed against the state." Plinton v. County of Summit, 540 F.3d 459, 463 (6th Cir. 2008). Plaintiff opted to proceed solely with her administrative proceeding against the state, and, unfortunately, she is bound by that selection, notwithstanding the fact that her claim was ultimately dismissed on jurisdictional grounds.[4] This is because "[t]he moment the claim is 'filed' with the claims commission, the plaintiff has waived all other of causes of action," and this remains so "*regardless of the subsequent disposition of the claim*." Haley, 188 S.W.3d at 524 (emphasis added).

In arriving at this conclusion, the Court recognizes that one of the salutary purposes of Tenn. Code Ann. 9-8-307(a) is "to prevent a plaintiff from receiving duplicative or inconsistent judgments in different tribunals for the same injury," Huskey v. Tennessee, 2008 WL 294310 at *2 (E.D. Tenn. July 24, 2008). That purpose would not be thwarted were this case allowed to go forward because the Tennessee Supreme Court did not address the merits of Plaintiff's negligence claim, and Plaintiff received no compensation for the loss of her son. However, the Tennessee Supreme Court advised

---

[4] Contrary to Plaintiff's suggestion that she did not have a "bite at the apple," Plaintiff did have a plenary trial during which she was afforded the opportunity to prove negligence on the part of DCS. However, the Commissioner was not persuaded, and found no negligence in DCS's recommendation regarding temporary placement, and no causal link between any alleged negligence by DCS and Carlyle's death.

8

in Haley that a plaintiff should not be allowed to proceed with a federal and/or state cause of action based on the same events as one before the Commission, even when plaintiff voluntarily withdraws the claim before any action is taken by the Commission, and even though the "situation [is] as if the claim had never been brought[.]" Haley, 188 S.W.3d at 524. This Court is bound by the Tennessee Supreme Court's interpretation of its waiver statute. See, Lopez v. Wilson, 426 F.3d 339, 351 (6th Cir. 2005) (citation omitted) ("it is 'axiomatic that state courts are the final authority on state law," and "[s]tate statutes mean what state courts say they mean'"); In re Drew, 1997 WL 441752 at *3 ("we apply state law, because only the state legislature can establish the procedures by which the state waives its immunity").

In concluding that dismissal is warranted, the Court has also considered Judge Echols' opinion in Bryant-Bruce v. Vanderbilt Univ., 974 F. Supp. 1127 (M.D. Tenn. 1991), which Plaintiff characterizes as a "thoughtful Opinion" drawing "a clear distinction between cases where there is a 9-8-307(b) waiver and where there is not," and which somehow supports the proposition that "there can be no analytical distinction between course and scope [of employment] and subject matter jurisdiction." (Docket No. 16 at 3). But there is a distinction –the statute itself exempts from waiver actions which are taken outside of the scope of employment, and Judge Echols simply recognized as much. Other than that, Judge Echols made many of the points already made herein, including that (1) Tenn. Code Ann. § 9-8-307(b) does not violate the Supremacy Clause of the United States Constitution and "requires 'a waiver of *any* cognate federal claim"; (2) "the Sixth Circuit has interpreted the waiver provision expansively"; (3) official capacity claims are barred upon the filing of a claim with the Commission; and (4) individual capacity suits are subjected to dismissal and can only be reinstated if the Commission determines a defendant's acts were outside the scope of his or her employment. Id, at 1135-36 (italics in original). Judge Echols also observed that while "the

9

Sixth Circuit's broad interpretation of the waiver statute has not come without disagreement . . . it is not for this Court to question established Sixth Circuit precedent." Id. at 1135 n.6.

### III. CONCLUSION

As stated at the outset, this is indeed a sad and tragic case, and the Court empathizes with Plaintiff over the loss of her son. In the end though, the Court is obligated to interpret and apply the law without sympathy or favor. In doing so, the Court concludes that Plaintiff's claim under Section 1983 is barred because she filed a claim with the Claims Commission, and, accordingly, Defendants' Motions to Dismiss will be granted.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE